**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| TQP DEVELOPMENT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:12-CV-180-WCB |
| | § | |
| | § | |
| INTUIT INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

On June 20, 2014, the Court granted summary judgment of noninfringement in favor of the defendants in this case (Dkt. No. 192). Plaintiff TQP Development, LLC ("TQP") has now moved for reconsideration of that order (Dkt. No. 196). The Court DENIES TQP's motion for reconsideration.

The background relevant to the present motion is set forth in this Court's Memorandum and Order of June 20, 2014 (Dkt. No. 192), and will not be repeated here. TQP makes three principal arguments why the Court should reconsider its entry of summary judgment of noninfringement. None of those arguments is convincing.

**I
The Court Did Not Apply an Incorrect Claim Construction or
Impose a Claim Limitation of Which TQP Was Unaware**

TQP first argues that the Court applied an incorrect construction of the key claim limitation in this case: "a new one of said key values in said first and said second sequences

being produced each time a predetermined number of said blocks are transmitted over said link." U.S. Patent No. 5,412,730 ("the '730 patent"), col. 12, ll. 46-49. According to TQP, the Court's summary judgment order incorrectly requires a connection between the transmission of data blocks and the use of a new encryption key value in the transmitter. TQP asserts that neither the claim language nor the Court's construction of the "a new one of said key values" limitation supports the requirement of a connection—temporal or otherwise—between transmission of data blocks and changing the encryption key value in the transmitter.

Contrary to TQP's contention, the language of the disputed limitation clearly requires a connection between the transmission of data blocks and the change in key values. The limitation reads: "a new one of said key values . . . being produced <u>each time</u> a predetermined number of said blocks <u>are transmitted</u> . . . ." '730 patent, col. 12, ll. 46-49 (emphases added). The entire point of that phrase is to describe a temporal relationship between the transmission of data blocks and the production of new key values. Although the precise meaning of the phrase "are transmitted" in the context of the '730 patent has been the subject of considerable dispute in this case, there has never been any serious question raised as to whether the "a new one of said key values" limitation requires a connection between the production of a new key value and some act of transmission—however that act of transmission is defined.

This Court's claim construction, along with that of each of the other judges who have construed the claim,[1] has consistently required a temporal connection between the production of

---

[1] See <u>TQP Dev., LLC v. Wells Fargo & Co.</u>, No. 2:12-cv-61, Dkt. No. 187, at 20 (E.D. Tex. Dec. 2, 2013); <u>TQP Dev., LLC v. 1-800-Flowers.com, Inc.</u>, No. 2:11-cv-248, Dkt. No. 226, at 22 (E.D. Tex. May 20, 2013); <u>TQP Dev., LLC v. Barclays PLC</u>, No. 2:09-cv-88, Dkt. No. 165, at 18 (E.D. Tex. Mar. 28, 2011).

new key values and the transmission of data blocks. The Court initially construed the "a new one of said key values" limitation as follows:

> For both the first and second sequences, at the transmitter and at the receiver respectively, a new key value is produced each time a predetermined number of blocks are transmitted over the link. The term "produced," as used in that sentence, means "generated" or "supplied." The phrase "are transmitted" means "are being transmitted" with respect to the transmitter and "have been transmitted" with respect to the receiver.

Dkt. No. 152, at 15-16. Like the language of the claims, that construction clearly requires a particular temporal connection between the production of new key values and the transmission of data blocks.

Subsequently, the Court modified its construction based on additional evidence submitted by the defendants of a preferred source-code embodiment, which is part of a microfiche appendix to the '730 patent. Even though broadening the construction could only serve to help TQP, the Court accepted the defendants' argument about the source-code embodiment and broadened the construction of the term "are transmitted" to mean either "are being transmitted" or "have been transmitted." Dkt. No. 192, at 17. That construction maintained the requirement of a temporal connection between the production of new key values and the transmission of data blocks. Indeed, TQP's own proposed construction of the "a new one of said key values" limitation in this case was: "a new key value in the first and second sequence is used <u>each time</u> a predetermined number of blocks <u>have been sent from the transmitter</u> over the communication link." Dkt. No. 135-1, at 5 (joint claim construction chart) (emphases added). That proposed construction also clearly calls for a temporal connection between the transmission of data blocks and the production of new key values. To characterize the claim language, the Court's

3

constructions, or TQP's proposed construction as not requiring such a connection is simply inaccurate.

The "a new one of said key values limitation" originated in original dependent claim 9, which was incorporated into original independent claim 8 to form what is now claim 1 of the '730 patent. In its initial opinion construing the "a new one of said key values" limitation, the Court stated that "[t]he only apparent role" of original claim 9 "was to specify that the 'predetermined characteristic' of the data in the independent claim could be limited to 'a predetermined number of said blocks.'" Dkt. No. 152, at 12. According to TQP, that statement shows that the Court previously interpreted the "a new one of said key values" limitation as not imposing a temporal connection between the production of new key values and the transmission of data blocks.

The Court meant no such thing. Nor is it reasonable to read the Court's statement, in context, in the manner TQP suggests. Original claim 9 read as follow: "The method set forth in claim 8 wherein said data transmitted over said link comprises a sequence of blocks and wherein a new one of said key values in said first and said second sequences is produced each time <u>a predetermined number of said blocks</u> are transmitted over said link." Accord Dkt. No. 152, at 6 (emphasis added). When the Court characterized the impact of original claim 9 in its original claim construction order, it used the phrase "a predetermined number of said blocks" as shorthand for "a predetermined number of said blocks [that] are transmitted over said link," since that is what original dependent claim 9 referred to.

Additionally, the Court's discussion was directed to rejecting the defendants' proposed construction that would have limited the production of new key values to the time <u>after</u> the

predetermined number of data blocks had been transmitted. Id. at 12. The Court found instead that the '730 patent disclosed a system whereby key values could be produced based on a count of the number of data blocks being transmitted, even if the transmission of those blocks was not yet completed. In other words, the Court was resolving a dispute about whether the phrase "are transmitted" referred to blocks that had already been transmitted or blocks that were in the process of being transmitted. See id. at 11-16. The Court never implied that some tie to an act of transmission—however defined—was not required. Any doubt on that point should have been resolved by the actual claim construction issued at the end of the Court's opinion. That construction clearly required a relationship between the production of new key values and the times when a predetermined number of blocks "are being transmitted." Id. at 15-16.

TQP next argues the embodiment depicted in Figure 1 of the '730 patent shows that there is no required temporal relationship between the production of new key values and the transmission of data blocks. In support of that argument, TQP offers the opinion of its expert that Figure 1 "does not expressly disclose a temporal link between use of a new key value and the process of transmission." Dkt. No. 196-1 ¶ 15. That argument fails for several reasons. First, contrary to TQP's expert, the description of Figure 1 in the '730 specification discloses a temporal link between the use of a new key value and the process of transmission, in the course of generating encrypted data in the transmitter. See '730 patent, col. 3, ll. 36-40 ("[T]he combination of counter **21** and generator **23** operate to change the encryption key each time [the] total number of bytes transmitted is an exact multiple of the predetermined interval number."). The block counter and generator in the receiver mirror the operation of the block counter and generator in the transmitter. See id., col. 3, line 64-col. 4, line 1 ("Block counter **29** performs the

5

identical function as that performed by the counter **21** at the transmitting station **11** and hence supplies advance signals to the generator **27** at precisely the same times (relative to the data stream) that counter **21** advances generator **23**."). That parallelism in the functioning of the transmitter and receiver indicate that the same temporal link that applies to the transmitter applies to the receiver as well.

Further evidence of a required temporal connection between the generation of a new key value and the transmission of data blocks is found in the portion of the specification that describes the invention as a whole. Consistently with description of Figure 1, but more explicitly, the specification there provides: "In order that the two generators switch from one output key value to the next in synchronism, means are employed at both the transmitting and receiving stations to monitor the flow of transmitted data and <u>to advance the random number generator each time the transmitted data satisfies a predetermined condition</u>." '730 patent, col. 1, ll. 48-53 (emphasis added).

Finally, and dispositively, the "a new one of said key values" limitation expressly provides for a temporal relationship between the production of new key values and the transmission of data blocks both in the receiver and in the transmitter. The limitation requires "a new one of said key values in [both the transmitter and receiver] being produced each time a predetermined number of said blocks are transmitted over said link." '730 patent, col. 12, ll. 46-49. Even if we were persuaded that Figure 1, as described in the specification, did not require a connection between the production of new key values and the transmission of data blocks, the claim language is clear in that regard and governs the scope of the patent. See <u>Cybor Corp. v. FAS Techs., Inc.</u>, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc); <u>Zenith Labs., Inc. v. Bristol-</u>

Myers Squibb Co., 19 F.3d 1418, 1423 (Fed. Cir. 1994) (in an infringement analysis "the only proper comparison is with the claims of the patent").

## II
## The Court Did Not Substitute Its Judgment for that of a Jury

TQP's second argument is that the issue on which the Court granted summary judgment presented a jury question. In TQP's view, its evidence created a genuine issue of material fact that should not have been decided by the Court. According to TQP, "the Court granted summary judgment because it found that TQP was required to present evidence showing that the encrypted blocks were also transmitted." TQP thereby implies that summary judgment would not have been granted if there were evidence that the encrypted blocks were transmitted. That is not an accurate description of the ground for the Court's ruling, however. The Court has never doubted, nor have the defendants contested, that the accused systems transmit every block that is encrypted. What the Court found lacking was proof that new key values are produced in the accused systems "each time a predetermined number of said blocks are transmitted over [the communication] link."

TQP argues that having demonstrated facts that it contends show that the "a new one of said key values" limitation was met, "the question of whether (1) use of a new key value when a block is encrypted by the transmitter for transmission is the same as (2) using a new key value when a block is transmitted is now a question of fact for the jury to decide." But as the Court found in its summary judgment opinion, TQP never introduced evidence sufficient to show that the "a new one of said key values" limitation is practiced by the accused systems. See Dkt. No. 192, at 24. Furthermore, encryption and transmission are distinct actions. The fact that every

block that is encrypted will also be transmitted does not mean that encryption and transmission are the same or that the steps of encryption and transmission would correspond to key changes in the same way.

At best, TQP's attempt to equate encryption and transmission amounts to an argument for infringement under the doctrine of equivalents—i.e., that changing key values each time a predetermined number of blocks are encrypted is equivalent to changing key values each time a predetermined number of blocks are transmitted. TQP, however, has conceded that it is barred by prosecution history estoppel from asserting infringement under the doctrine of equivalents for the "a new one of said key values" limitation. Dkt. No. 132, at 2 n.2 ("TQP does not contest Defendants' arguments concerning the doctrine of equivalents."). TQP therefore cannot now argue that counting the number of blocks encrypted since the previous key change is equivalent to counting the number of blocks that "are being transmitted" or "have been transmitted."

## III
### TQP's New Evidence is Not Material to Infringement

TQP asserts that had it been aware that the Court would construe the '730 patent as requiring a connection between the production of new key values and transmission of data blocks, it would have presented evidence in the form of a declaration from its expert—Dr. Trent Jaeger—that the accused systems have such a connection. According to TQP, Dr. Jaeger's new declaration creates a dispute of fact as to whether the "a new one of said key values limitation" is met by the accused systems when that limitation "includes the temporal relationship between the process of transmission and use of a new key value . . . i.e., that the use of a new key value must be based on when a block is in the process of transmission or is being transmitted."

TQP's argument is implausible on its face. Essentially, TQP's argument is that it did not proffer Dr. Jaeger's new declaration at an earlier point because it was not previously aware that the Court would require "that the use of a new key value must be based on when a block is in the process of transmission or is being transmitted." But that requirement was plainly set forth in the Court's initial claim construction order, which construed the disputed limitation to include the requirement that "a new key value is produced each time a predetermined number of blocks are transmitted over the link. . . . The phrase 'are transmitted' means 'are being transmitted' with respect to the transmitter . . . ." Dkt. No. 152, at 16. And, as already described, the requirement of a connection between the transmission of data blocks and the production of new key values is clear on the face of the disputed limitation; indeed, it was present in TQP's own proposed construction, even if the exact nature of that connection was disputed.

Furthermore, Dr. Jaeger's declaration does not add any information that the Court considers "new" or that would impact the Court's judgment. TQP relies on Dr. Jaeger's declaration for the proposition that "there is no distinction between encryption and transmission with regard to production and use of a new key value." Dkt. No. 196-1 ¶ 14 (Jaeger Declaration). Dr. Jaeger reaches that conclusion because every data block produced in the accused systems "will be both encrypted and transmitted using the same key value." Id. ¶ 9. Therefore, according to Dr. Jaeger, "there is already a temporal link between use of a new key value and transmission." Id. The Court, however, already knew that every encrypted block at the transmitter was eventually transmitted, and the Court assumed as much in its summary judgment analysis. The fact that every encrypted block will eventually be transmitted simply does not support Dr. Jaeger's statement that "there is no distinction between encryption and

9

transmission with regard to production and use of a new key value." As already described, encryption and transmission are distinct events that can each maintain a separate relationship with respect to the production of new key values.

Beyond that, Dr. Jaeger's conclusion that "there is already a temporal link between the production and use of a new key value and transmission" misses the point. The "a new one of said key values" limitation is not satisfied by just any temporal connection; it is satisfied only by the particular temporal connection described in the claim: that a new key value is produced "<u>each time</u> a predetermined number of . . . blocks <u>are transmitted</u> over said link." '730 patent, col. 12, ll. 48-49 (emphases added). Dr. Jaeger's declaration does not address the particular temporal connection required by the claims and therefore does not address the underlying reason why summary judgment was granted in this case.

Similarly, Dr. Jaeger's statement that the accused systems "produce[] a new key value for every block that is being transmitted" does not address the temporal connection required by the claims. What matters is that a new key value is produced "each time" a single block is being transmitted or a single block has been transmitted, not simply that each block gets a new key value.

The Court thus concludes that TQP has offered no valid excuse for failing to present its alleged new evidence at an earlier time. Moreover, that evidence does nothing to further TQP's infringement case and would not have changed the outcome with respect to the Court's grant of summary judgment in the defendants' favor, even if it had been timely presented to the Court.

For the foregoing reasons, TQP's Motion for Reconsideration is denied.

It is so ORDERED.

SIGNED this 23rd day of July, 2014.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE